6-96-028-CV Long Trusts v. Dowd 













In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-03-00068-CV


______________________________





IN RE: MANCHESTER TANK AND EQUIPMENT COMPANY









 


Original Mandamus Proceeding









 
 



Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter








MEMORANDUM OPINION



 Manchester Tank and Equipment Company, relator, filed a petition for writ of mandamus in
which it asked this Court to direct the trial court to order the disqualification of a law firm. 
Manchester Tank has now informed this Court that the law firm has agreed to withdraw. When this
Court cannot take any action that can effect the requested relief, and thus the order will have no
practical result, we dismiss the petition for writ of mandamus as moot. Dow Chem. Co. v. Garcia,
909 S.W.2d 503, 505 (Tex. 1995). 

 The petition is dismissed as moot.




 Jack Carter

 Justice


Date Submitted: June 11, 2003

Date Decided: June 12, 2003



App.-Texarkana 1993, no pet.). So, our inquiry is whether a rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Mathis v. State, 67 S.W.3d 918,
922 (Tex. Crim. App. 2002).

 The evidence at trial, viewed in the light most favorable to the verdict, established the
following sequence of events. On January 7, 2002, Smith visited Discount Auto in Quinlan, Hunt
County, Texas. James Joseph recognized Smith as someone with whom the company had dealt
previously, and allowed Smith to test drive a Ford pickup truck. The pickup was a 1994 model,
black, with an extended cab, flared sides, and pinstriping. Joseph informed Smith that he was
allowed to drive the truck three miles in any direction away from the car dealership. After Smith did
not return for some time, Joseph became concerned and contacted the Hunt County sheriff's
dispatcher, who advised Joseph to wait longer to see if Smith would return. On January 9, Smith
still had not returned, and the Quinlan chief of police came to the dealership and, on learning of the
incident, contacted the Hunt County Sheriff's Office concerning the matter. Hunt County sent
Deputy Henry Grandfield to Discount Auto, where he took the report at approximately 9:30 that
morning. In his report, Grandfield noted that Joseph described the truck as a 1994 black Ford F-150
pickup truck with an extended cab, tinted windows, Texas license plate number KR0284, and vehicle
identification number ("VIN") 1FTEX15NIRKB60966. He described the man who had taken the
vehicle as a man with salt-and pepper-colored hair, in his late 40s to early 50s, approximately six feet
one to six feet four inches tall, and weighing approximately 160 pounds. 

 Approximately four hours later and twenty-five miles away from Quinlan, Grandfield, who
was about to finish his routine patrol in Greenville, saw what he believed to be the truck that Joseph
had reported as stolen. He began to follow Smith, who shortly thereafter accelerated and began
passing quickly through the fairly heavy traffic. Grandfield turned on his lights and siren, and
followed Smith, whose driving had become increasingly dangerous. Grandfield testified that at
times speeds during the three-mile chase reached 70-80 miles per hour through town and that Smith
disregarded traffic signs and signals throughout the pursuit. Finally, Smith drove through a grassy
field and onto a parking lot, where he tried to pass between two parked cars but failed, crashing into
one. Grandfield then arrested the driver, who verbally identified himself as Johnny Earl Smith. 

 Grandfield made arrangements to have the vehicle impounded and inventoried. James
Frazier of Morgan Towing arrived to assist Grandfield. Because the front portion of the truck was
now positioned on the hood of a parked car, Frazier first removed the car from underneath the truck. 
He then entered the truck to prepare it for tow, stepped on a hard object in the floorboard, and,
without disturbing the object, alerted Grandfield to the long object wrapped in green cloth. 
Grandfield unwrapped the object, which was a sawed-off shotgun. 

 At the end of the State's case-in-chief, Smith moved for a directed verdict, and the trial court
denied the motion. During the State's rebuttal, Grandfield testified that the truck Smith wrecked and
the truck reported stolen both had the same Texas license plate number, KR0284, and VIN number,
1FTEX15NIRKB60966. 

 A person commits the offense of unauthorized use of a motor vehicle when "he intentionally
or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective
consent of the owner." Tex. Pen. Code Ann. § 31.07. Viewing the evidence in the light most
favorable to Smith's guilty verdict, we conclude that any rational trier of fact could have found
beyond a reasonable doubt the essential elements of unauthorized use of a vehicle. Smith challenges
the State's evidence as to only one element of the offense. He contends the State did not provide
sufficient evidence that the truck he was driving at the time of the chase and arrest was the truck that
was taken from Joseph at Discount Auto. We disagree. 

 There have been cases where complaints similar to Smith's have successfully challenged the
State's evidence. We find one of those instances in Winn v. State, 828 S.W.2d 284, 285-86 (Tex.
App.-Houston [14th Dist.] 1992, no pet.). Winn moved for an instructed verdict when the State
failed to present any evidence of the license plate numbers or the vehicle identification numbers from
the van that was stolen and the van he was driving. Id. at 286. The scant evidence that the State did
offer to connect the two vehicles was contradictory. Id. The complainant, who never identified the
impounded vehicle that the police seized, testified that her van was blue and grayish in color. Police
described the van that Winn was driving as blue and brown. The appellate court held that, on this
evidence, no rational trier of fact could have found all the elements of the offense beyond a
reasonable doubt and, thus, the trial court erred in denying Winn's motion for an instructed verdict. 
Id.

 Likewise, in Hooper, when the State proved only that the victim's car and the car driven by
the appellant were both Buick Regals, the court should have granted an instructed verdict. Hooper
v. State, 788 S.W.2d 24, 25 (Tex. App.-Houston [1st Dist.] 1987, no pet.). Additionally, the two
cars were different colors and had different license plate numbers, and the owner of the stolen Buick
Regal even testified that police had returned his vehicle to him before the defendant was arrested. 
Id. at 25-26. Because there was insufficient evidence that the vehicle the defendant was driving was
the same vehicle that was stolen, the court reversed the conviction. Id. at 26.

 The evidence in our case is much stronger than the evidence in either Winn or Hooper. We
find our case more closely analogous to Fisher v. State, 829 S.W.2d 403 (Tex. App.-Fort Worth
1992, pet. ref'd). In that case, Snider, the complainant, identified a photograph of a Camaro
automobile as being the same vehicle that was stolen from his dealership and the same vehicle that
authorities returned to him. Id. at 405. An examination of that photograph reveals that the car
Snider identified as the vehicle that was stolen bore the Texas license plate number ZEW479, the
same license plate number as was on the blue Camaro that the defendant was driving. The court
concluded that the trial court's denial of the defendant's motion for instructed verdict was proper
because the jury could have reasonably found that the vehicle the defendant was driving and the
vehicle reported stolen were the same vehicle since the year, make, model, paint color, license plate
number, and VIN were the same. See id.

 Another appellant convicted of unauthorized use of a vehicle challenged the sufficiency of
the State's evidence to prove that the car he was driving was the same car owned by the complainant. 
Lyles v. State, 582 S.W.2d 138, 142 (Tex. Crim. App. [Panel Op.] 1979). Before Lyles operated the
vehicle, he had ripped out some wires from underneath the dashboard. Id. The complainant testified
that, when he recovered his car, it had the same damage to the wiring underneath the dashboard. The
court noted that the evidence linking the two 1969 Plymouths was not developed as well as it could
and should have been, but held that the State's circumstantial evidence was sufficient to show that
the vehicles were one and the same. Id. at 143. 

 Here, Joseph testified that the stolen truck was a 1994 black Ford pickup truck with flared
sides, an extended cab, and pinstriping that was "like a red and silver." Grandfield testified that he
received a report from Joseph regarding a stolen 1994 Ford F-150 extended cab with tinted windows
and one-inch purple pinstriping and that later he saw a truck with tinted windows and purple
pinstriping.

 Additionally, the State's rebuttal case included testimony showing that the license plate
number and the VIN on the truck that Smith was driving are the same as for the truck that Joseph
reported stolen. So, while Smith contends that the State failed to produce evidence as to the license
plate or VIN of the truck, the record clearly indicates the contrary. While the State may not have
presented this evidence before Smith's motion for directed verdict, we review all evidence presented
at trial to determine whether the evidence is legally sufficient to support the conviction. Smith points
to the discrepancy in the color of the pinstriping on the truck in an attempt to bring his case within
the reasoning of Winn. The testimony we have here regarding the matching license plate number and
VIN, however, establishes the solid connection between the vehicle driven and the one stolen that
was absent in Winn. Having heard this evidence, a rational trier of fact could have reasonably
concluded that the truck Smith crashed was the same truck that Joseph reported stolen.

 We affirm the judgment.


 William J. Cornelius*

 Justice


*Chief Justice, Retired, Sitting by Assignment


Date Submitted: February 13, 2003

Date Decided: May 22, 2003


Publish
1. The offense of unauthorized use of a vehicle is a state-jail felony. However, because Smith
used  a  deadly  weapon  and  there  were  enhancements  at  punishment,  the  offense  became  a
third-degree felony with a punishment range of two to ten years.